UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


ANNA L. BROWN,

                    Plaintiff,

vs.                                    Case No.  2:08-cv-308-FtM-29SPC

THE FLORIDA BAR; THE SUPREME COURT
OF FLORIDA; R. FRED LEWIS; CHARLES
T. WELLS; HARRY LEE ANSTEAD; BARBARA
J. PARIENTE; PEGGY A. QUINCE; RAOUL
G. CANTERO; KENNETH B. BELL,

                    Defendant.
_____


**OPINION AND ORDER**

_____This matter comes before the Court on The Florida Bar's Motion
to Dismiss Second Amended Complaint and Incorporated Memorandum of
Law (Doc. #61) filed on July 7, 2009, and Defendants The Supreme
Court of Florida and Florida Supreme Court Justices R. Fred Lewis,
Charles T. Wells, Harry Lee Anstead, Barbara J. Pariente, Peggy A.
Quince, Raoul G. Cantero and Kenneth Bell's Motion to Dismiss
Second Amended Complaint (Doc. #64) filed on July 20, 2009.
Plaintiff filed a Response to both Motions (Doc. #68) on September
14, 2009.  Plaintiff filed a Motion for Leave to Supplement
Response *Nunc Pro Tunc* (Doc. #73), which will be granted, and
plaintiff's Supplemental Memorandum in Opposition to Motions to
Dismiss (Doc. #70) will be considered.  As a result, Defendants The

Supreme Court of Florida and Florida Supreme Court Justices R. Fred Lewis, Charles T. Wells, Harry Lee Anstead, Barbara J. Pariente, Peggy A. Quince, Raoul G. Cantero and Kenneth Bell's Motion to Strike "Plaintiff's Supplemental Memorandum in Opposition to Motions to Dismiss" (Doc. #71) will be denied.

## I.

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89, 93 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The former rule--that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)--has been retired by Twombly. James River Ins. Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). The

Court need not accept as true legal conclusions or mere conclusory statements. Id. Dismissal is warranted under Fᴇᴅ. R. Cɪᴠ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

## II.

Anna Brown (plaintiff or Brown) is a black female attorney licensed to practice law in the State of Florida. Brown's first federal suit against The Florida Bar was dismissed, and the dismissal was affirmed on appeal based on Eleventh Amendment immunity. Brown v. Florida Bar, 243 Fed. Appx. 552 (11th Cir. 2007). In the current case, Brown sues The Florida Bar, the Supreme Court of Florida, and its individual Justices seeking declaratory and injunctive relief. A six-count Amended Complaint (Doc. #33) was premised upon two separate and unrelated disciplinary proceedings initiated by The Florida Bar against Brown. In a May 29, 2009 Opinion and Order (Doc. #59), the Court dismissed Brown's Amended Complaint. Plaintiff was granted leave to file a second amended complaint as to the claim related to her facial challenge to the constitutionality of The Florida Bar and The Rules Regulating the Florida Bar. (Id. at pp. 18-19.)

On June 18, 2009, plaintiff filed a two-count Second Amended Complaint (Doc. #60) against The Florida Bar, The Supreme Court of Florida, and its current Justices. Brown sets forth in some detail

her view of her past disciplinary proceedings with The Florida Bar and the Supreme Court of Florida and, to understate the matter, her dissatisfaction with both the procedures and outcomes of those proceedings. (Id. at ¶¶ 11-87.) This experience, Brown asserts, brings her to the point where she "objects to her continued compelled membership in the Florida Bar and demands to be relieved of the same." (Id. at ¶ 88.)

Count I seeks a declaratory judgment pursuant to the federal Declaratory Judgment Act, 28 U.S.C. § 2201. Plaintiff identifies the issue as follows: "Can the mandatory state bar constitutionally exist within this state where the so-called "right-to-work" prohibition against closed shops is part of the state constitution?" (Id. at ¶ 104.) Brown asserts that she "wishes no longer to be an involuntary member of the labor organization called the Florida Bar, though she may wish to gain or regain work as a practicing lawyer in this state. She believes she has the right to opt out of Bar membership, and that she cannot be compelled to remain a member of a labor organization as a precondition to practicing law in Florida." (Id. at ¶ 105.) Brown therefore seeks a declaratory judgment that "the Florida Bar is unconstitutionally constituted, is sufficiently akin to, and amounts to, an impermissible closed shop under pertinent law, and that accordingly, she is not required to maintain her membership in such organization as a condition of working as a licensed attorney in

the State of Florida, plus any and all such further relief this Court may deem just and proper." (Id. at p. 19.)

Count II seeks injunctive relief voiding Brown's compulsory membership in The Florida Bar. Brown asserts that she "has attained the right to practice law notwithstanding, and regardless of, her compulsory membership in the pseudo-organization called the Florida Bar." (Id. at ¶ 106.) Brown seeks to preliminarily and permanently enjoin The Florida Bar and the Supreme Court of Florida from continuing to compel her membership as a precondition to her practice of law (id. at ¶¶ 110, 111), and seeks an injunction "voiding her Bar membership while preserving her property interest in her license to practice law and therefore her ability and right to continue to practice law in the Florida state courts, plus any and all such further relief this Court may deem just and proper." (Id. at pp. 20-21.)

### III.

Defendants seek dismissal of the Second Amended Complaint on three grounds. First, defendants argue that the case is not fit for adjudication because there is no actual case or controversy. Second, defendants argue that as a matter of law plaintiff is not entitled to the declaratory judgment or injunction she seeks. Third, defendants argue that the Court should exercise its discretion and decline to exercise supplemental jurisdiction as to the claim that The Florida Bar membership requirement violates Florida law.

**Count I: Declaratory Judgment Regarding Integrated Bar**

**A. Declaratory Judgment Act "Controversy"**

Since Brown seeks declaratory relief pursuant to the Declaratory Judgment Act of 1934, 28 U.S.C. § 2201, *et seq.*, defendants' reliance on Florida law (Doc. #61, pp. 2-3) is misplaced. It is certainly true, however, that federal courts are courts of limited jurisdiction, and that Article III, § 2 of the United States Constitution limits the judicial power of federal courts to certain types of "cases" or "controversies". While federal courts were initially thought to lack subject matter jurisdiction to issue a declaratory judgment, Willing v. Chicago Auditorium Ass'n, 277 U.S. 274 (1928), Congress was found to have acted within its authorized Article III power when it enacted the Declaratory Judgment Act of 1934. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40 (1937). The Declaratory Judgment Act specifically requires "a case of actual controversy" within the court's jurisdiction:

> In a case of actual controversy within its jurisdiction
> . . . any court of the United States . . . may declare
> the rights and other legal relations of any interested
> party seeking declaration, whether or not future relief
> is or could be sought. Any such declaration shall have
> the force and effect of a final judgment or decree and
> shall be reviewable as such.

28 U.S.C. § 2201(a). This provision "manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense. The word

'actual' is one of emphasis rather than of definition." <u>Haworth</u>,
300 U.S. at 239-40.  Thus, "a declaratory judgment may be issued
only in the case of an actual controversy." <u>Malowney v. Federal
Collection Deposit Group</u>, 193 F.3d 1342, 1347 (11th Cir. 1999)
(internal quotation omitted).

To determine whether a "controversy" actually exists, <u>Haworth</u>
still provides useful benchmarks:

> A 'controversy' in this sense must be one that is
> appropriate for judicial determination. [ ] A justiciable
> controversy is thus distinguished from a difference or
> dispute of a hypothetical or abstract character; from one
> that is academic or moot. [ ] The controversy must be
> definite and concrete, touching the legal relations of
> parties having adverse legal interests. [ ] It must be a
> real and substantial controversy admitting of specific
> relief through a decree of a conclusive character, as
> distinguished from an opinion advising what the law would
> be upon a hypothetical state of facts. [ ] Where there is
> such a concrete case admitting of an immediate and
> definitive determination of the legal rights of the
> parties in an adversary proceeding upon the facts
> alleged, the judicial function may be appropriately
> exercised although the adjudication of the rights of the
> litigants may not require the award of process or the
> payment of damages. [ ] And as it is not essential to the
> exercise of the judicial power that an injunction be
> sought, allegations that irreparable injury is threatened
> are not required.

<u>Haworth</u>, 300 U.S. at 240-41 (internal citations omitted).  "The
plaintiff must allege facts from which the continuation of the
dispute may be reasonably inferred. Additionally, the continuing
controversy may not be conjectural, hypothetical, or contingent; it
must be real and immediate, and create a definite, rather than
speculative threat of future injury." <u>Malowney</u>, 193 F.3d at 1347
(internal citation and quotation omitted).  "Basically, the

question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007)(quoting Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941)).

Defendants argue that Brown has failed to demonstrate that she has an immediate or imminently threatened injury and that the facts do not show a substantial controversy between parties having adverse legal interest of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. (Doc. #61, p. 4.) Brown responds that there is an actual controversy in that she has a substantial interest in practicing law and that in order to maintain her status as an attorney, she must remain an involuntary member of the Bar. Considering plaintiff's past experience with The Florida Bar, plaintiff would rather resign her membership. (Doc. #60, ¶¶ 91-95.) Further, Brown argues, until the declaratory judgment issues, she is compelled to maintain her involuntary membership or else she will be denied her privilege to practice law, notwithstanding her licensing, education, and experience. (Id.)

The Court finds that the Second Amended Complaint satisfies the "controversy" requirement of the federal Declaratory Judgment Act. Plaintiff has stated her position clearly - she claims she

may lawfully practice law in the State of Florida without being a member of The Florida Bar, and wishes to opt out of such membership without sanction.  Defendants clearly are of a view that this is not a valid option for an attorney who wishes to practice law in the State of Florida.  This is a substantial dispute, with no middle position available.  The Second Amended Complaint also sets forth in detail plaintiff's motivation - the personal disciplinary history which plaintiff views as abusive.  Whether plaintiff is right or wrong in her beliefs as to her disciplinary proceedings, there can be no doubt that the parties are adverse and that the dispute is not hypothetical, abstract or moot.  The controversy also clearly touches the legal relation of parties, and unilateral action by plaintiff could subject her to severe sanctions.  For example, if plaintiff was to resign from The Florida Bar and continue to practice law, she would face punishment.  <u>See</u> R. REGULATING FLA. BAR 1-8.2 & 10; <u>see</u> <u>also</u>, <u>Sperry v. Florida</u>, 373 U.S. 379, 383 (1963).  Similarly, if plaintiff was to simply stop paying Bar dues, she would be suspended and could not practice law.  A person is not required to subject herself to such government sanction as a precondition to a declaratory action.  <u>MedImmune, Inc.</u>, 549 U.S. at 128-29.

> Our analysis must begin with the recognition that, where
> threatened action by government is concerned, we do not
> require a plaintiff to expose himself to liability before
> bringing suit to challenge the basis for the threat--for
> example, the constitutionality of a law threatened to be
> enforced. The plaintiff's own action (or inaction) in
> failing to violate the law eliminates the imminent threat

> of prosecution, but nonetheless does not eliminate
> Article III jurisdiction.

Id. Accordingly, the Court rejects defendants' argument that there is no justiciable controversy set forth in the Second Amended Complaint.

**B.  Entitlement to Relief**

Brown alleges that compelled membership in The Florida State Bar deprives her of the constitutional property interest in her license to practice law under the Fourteenth Amendment. (Doc. #60, ¶ 91.) Brown also asserts that her involuntary membership in the Florida Bar is a violation of her First and Fourteenth Amendment right of association. (Id. at ¶ 113.) Further, Brown asserts that such compelled bar membership violates the Florida state constitution, which guarantees her the right to work. (Id. at ¶¶ 95-96.) Defendants argue that dismissal is appropriate as a matter of law since plaintiff is not entitled to the declaration or injunction she seeks because the law has already decided the issues against her. Defendants allege that it is well settled law that the State may constitutionally require a lawyer to be a member of an integrated bar, and that the Court should not reach issues solely of Florida law.

The Florida Bar is an entity commonly referred to as an "integrated bar," that is, "an association of attorneys in which membership and dues are required as a condition of practicing law in a State." Keller v. California Bar, 496 U.S. 1, 5 (1990). The

Supreme Court of Florida exercises supervisory authority over The Florida Bar pursuant to article V, section 15, of the Florida Constitution, which provides that "[t]he supreme court shall have exclusive jurisdiction to regulate the admission of persons to the practice of law and the discipline of persons admitted." <u>Liberty Counsel v. Florida Bar Bd. Of Governors</u>, 12 So. 3d 183, 184 (Fla. 2009).

The Court finds that compelled membership in an integrated bar does not violate plaintiff's First Amendment rights. In <u>Keller</u> the Supreme Court discussed that general proposition in the following terms:

> In <u>Lathrop v. Donohue</u>, 367 U.S. 820 [ ](1961), a Wisconsin lawyer claimed that he could not constitutionally be compelled to join and financially support a state bar association which expressed opinions on, and attempted to influence, legislation. Six Members of this Court, relying on <u>Railway Employees' Dept. v. Hanson</u>, 351 U.S. 225, [ ](1956), rejected this claim.

> "In our view the case presents a claim of impingement upon freedom of association no different from that which we decided in [<u>Hanson</u>]. We there held that § 2, Eleventh of the Railway Labor Act . . . did not on its face abridge protected rights of association in authorizing union-shop agreements between interstate railroads and unions of their employees conditioning the employees' continued employment on payment of union dues, initiation fees and assessments . . . . In rejecting Hanson's claim of abridgment of his rights of freedom of association, we said, 'On the present record, there is no more an infringement or impairment of First Amendment rights than there would be in the case of a lawyer who by state law is required to be a member of an integrated bar.' [ ]. Both in purport and in practice the bulk of State Bar activities serve the function, or at least so Wisconsin might reasonably believe, of elevating the educational and ethical standards of the Bar to the end of improving the quality of the legal service available

to the people of the State, without any reference to the political process. It cannot be denied that this is a legitimate end of state policy. We think that the Supreme Court of Wisconsin, in order to further the State's legitimate interests in raising the quality of professional services, may constitutionally require that the costs of improving the profession in this fashion should be shared by the subjects and beneficiaries of the regulatory program, the lawyers, even though the organization created to attain the objective also engages in some legislative activity. Given the character of the integrated bar shown on this record, in the light of the limitation of the membership requirement to the compulsory payment of reasonable annual dues, we are unable to find any impingement upon protected rights of association." <u>Lathrop</u>, 367 U.S. at 842-843[ ].

Justice Harlan, joined by Justice Frankfurter, similarly concluded that "[t]he <u>Hanson</u> case [ ] decided by a unanimous Court, surely lays at rest all doubt that a State may Constitutionally condition the right to practice law upon membership in an integrated bar association, a condition fully as justified by state needs as the union shop is by federal needs."

<u>Keller</u>, 496 U.S. at 7-9 (internal citations omitted). In <u>Kaimowitz v. The Florida Bar</u>, the Eleventh Circuit adopted a district court opinion which addressed the very claim at issue in this case. <u>Kaimowitz v. The Florida Bar</u>, 996 F.2d 1151, 1153 (11th Cir. 1993). The district court held that compelled membership in The Florida Bar did not violate the First Amendment right to freedom of association, relying upon <u>Lathrop v. Donohue</u>, 367 U.S. 820 (1961). <u>See also</u> <u>Gibson v. The Florida Bar</u>, 798 F.2d 1564 (11th Cir. 1986).

The Court also finds that compulsory bar membership does not violate plaintiff's Fourteenth Amendment rights. While Brown alleges that she has a property interest under the Fourteenth Amendment to her law license, (Doc. #68, p. 5), this is not supported by the case law. "There is no vested right in an

individual to practice law." Ippolito v. Florida, 824 F. Supp. 1562, 1573 (M.D. Fla. 1993). The right to practice law is not a privilege or immunity within the meaning of the Fourteenth Amendment. Schware v. Board of Bar Exam. of N.M., 353 U.S. 232, 239 n.5 (1957); State ex rel. Florida Bar v. Sperry, 140 So. 2d 587, 589 (Fla. 1962), vacated on other grounds, 373 U.S. 379 (1963).

The Florida Constitution has a right to work provision, Article I, section 6, Florida Constitution, which provides: "Right to Work. The right of persons to work shall not be denied or abridged on account of membership or non-membership in any labor union or labor organization. The right of employees, by and through a labor organization, to bargain collectively shall not be denied or abridged. Public employees shall not have the right to strike." Fl. Const. art. I, § 6. The federal constitutional principles do not change simply because Florida has adopted such a "right to work" provision in its Constitution.

Plaintiff, however, also alleges that mandatory bar membership violates the Florida Constitution's right to work provision, and "seeks to have the federal courts decide the legitimacy of the state's original order 'integrating' the bar, for it is by such order that she is compelled to join what amounts to a labor organization as a precondition to her employment as a lawyer in this state." (Doc. #68, p. 8.) In other words, plaintiff asserts that even if Florida could constitutionally require mandatory bar

membership, the process by which this was accomplished in Florida violates Florida law. Defendants urge the Court to decline to exercise supplemental jurisdiction as to this purely state law claim. Whether compulsory bar membership violates Florida's "right to work" constitutional provision is a purely state law issue.

It is clear that the Court has subject matter jurisdiction over plaintiff's state law claim because it was brought with her federal claims and is so related to those claims that "they form[ed] part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This jurisdiction continues even after the Court dismisses all the federal claims, <u>Carlsbad Tech., Inc. v. HIF Bio, Inc.</u>, 129 S.Ct. 1862, 1867 (2009), but at that point a district court must exercise its discretion to determine whether to continue to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c). The Court will exercise this discretion by not entertaining plaintiff's state law claim. The Supreme Court of Florida is the final arbiter of Florida law, and plaintiff relies upon what she believes to be contradictory Florida laws in her argument that The Florida Bar was improperly integrated. (<u>See</u> Doc. #68, p. 8.) Florida courts are better suited to resolve such issues of Florida law. Additionally, if after the Florida courts have resolved plaintiff's claims, and plaintiff still seeks federal court review, plaintiff may seek a writ of certiorari to the United States Supreme Court. 28 U.S.C § 1257(a).

Finally, plaintiff seems to suggests that there may be a violation of federal labor statutes, but that it "will take discovery and litigation to find out whether such could be." (Doc. #68, p. 14.) Plaintiff has not stated any such cause of action, and there is no basis to allow discovery in this case so she can determine if a different claim may be plausible.

**Count II: Injunctive Relief Voiding Compulsory Membership**

"A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004). The burden of persuasion for each of the four requirements is upon the movant. Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)(en banc). "The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." Klay, 376 F.3d at 1097 (quoting Siegel, 234 F.3d at 1213 (Carnes, J., dissenting)). An injunction is "an extraordinary remedy" which is only available when a "legal right has been infringed by an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." Alabama

v. United States Army Corps of Eng'rs, 424 F.3d 1117, 1127 (11th Cir. 2005).

Brown seeks to enjoin the Florida Supreme Court and the Florida Bar from further compelling her membership as a precondition to her ability or right to practice law. Plaintiff asserts that she can show that there is a substantial likelihood of success on the merits because she "is correct in asserting that the Bar is akin to a labor organization . . . and it is irrefutable that the Supreme Court integrated the Florida bar at a time when it was illegal to create a labor organization and require any attorney to be a member thereof . . . ." (Doc. #60, ¶ 112.) Defendants argue that plaintiff has no likelihood of success on the merits. They argue that the United States Supreme Court has repeatedly recognized the authority of states to regulate lawyers including the requirement of dues and compulsory membership. (Doc. #61, p. 4; Doc. #64, p. 8.)

The Court finds that Brown cannot establish a substantial likelihood of success on the merits of her First and Fourteenth Amendment claim because it is well settled law that compulsory bar membership is constitutional. Since Brown cannot establish a substantial likelihood of success on the merits, she is not entitled to an injunction. ACLU of Fla., Inc. v. Miami-Dade County Sch. Bd., 557 F.3d 1177, 1198 (11th Cir. 2009). Thus, the Court will grant Defendants' Motions to Dismiss Count II of the Second Amended complaint.

Accordingly, it is now

**ORDERED:**

1. The Florida Bar's Motion to Dismiss Second Amended Complaint (Doc. #61) is **GRANTED**, and the Second Amended Complaint is dismissed for the reasons stated above.

2. Defendants The Supreme Court of Florida and Florida Supreme Court Justices R. Fred Lewis, Charles T. Wells, Harry Lee Anstead, Barbara J. Pariente, Peggy A. Quince, Raoul G. Cantero and Kenneth Bell's Motion to Dismiss Second Amended Complaint (Doc. #64) is **GRANTED**, and the Second Amended Complaint is dismissed for the reasons stated above.

3. Plaintiff filed a Motion for Leave to Supplement Response *Nunc Pro Tunc* (Doc. #73) is **GRANTED** and plaintiff's Supplemental Memorandum in Opposition to Motions to Dismiss (Doc. #70) is accepted as filed.

4. Defendants The Supreme Court of Florida and Florida Supreme Court Justices R. Fred Lewis, Charles T. Wells, Harry Lee Anstead, Barbara J. Pariente, Peggy A. Quince, Raoul G. Cantero and Kenneth Bell's Motion to Strike "Plaintiff's Supplemental Memorandum in Opposition to Motions to Dismiss" (Doc. #71) is **DENIED**.

5. The Clerk of the Court shall enter judgment in favor of the defendants and against plaintiff. The Clerk shall terminate all pending motions and deadlines as moot and close the case.

**DONE AND ORDERED** at Fort Myers, Florida, this ___22nd___ day of March, 2010.

JOHN E. STEELE
United States District Judge


Copies:
Counsel of record